## Salaun *v.* Relf et al.

Where a purchaser executes a mortgage on the property purchased, in favor of his vendor, to secure the payment of a bill drawn by them on a third person, in favor of their vendor, for the price, the act reciting that a special mortgage is retained on the property in favor of the vendor or any other holder of the bill, but not stipulating that the acceptor of the bill should have the benefit of the mortgage, on paying the draft without having been put in funds by the drawers and without being bound as to them to pay it, if the bill be paid by the acceptor at maturity without any subrogation from the creditors at the time of payment, the debt will be extinguished as to third persons and the mortgage cease to operate adversely to other mortgage creditors. *Per Cur:* The debt, as recited in the act of mortgage, was the debt of the acceptor; the draft makes him the principal debtor; and, on paying it, he paid his own debt, which the mortgage was given to secure. The creditor was paid; and as no other object was disclosed in the act of mortgage, and as there is no reser-

vation or qualification contained in it, the mortgage cannot be kept alive for any other ulterior object, or for the benefit of any other person, unless it result from the tenor of the draft itself.

APPEAL from the Fourth District Court of New Orleans, *Strawbridge*, J. *A. Denis*, for the plaintiff and appellant. *J. & H. H. Strawbridge*, con-trá. The judgment of the court was pronounced by

EUSTIS, C. J. The plaintiff took out an execution on a judgment he had obtained against the defendants, by virtue of which the sheriff seized upon certain slaves. The object of his demand in the present case is, to remove the encumbrance on the slaves resulting from a certain mortgage of which *Christoval Toledano* claims the benefit, and who is the antagonist party insisting on his right of mortgage. After hearing the evidence and argument, the district judge discharged the rule taken by the plaintiff for the purpose of having the mortgage cancelled, on the ground of the validity of *Toledano's* right therein; and from this judgment the plaintiff has appealed.

The act of mortgage bears date the 14th of February 1848. It is executed by the defendant and *John Arnold Weysham*, to secure the payment of a certain draft drawn by them on *Christoval Toledano*, and accepted by him, for $6,700, dated on the day of the act and payable on the 1st of June 1849. The draft was in favor of *Bell & Stebbins*, or order, who had by the same act sold several slaves to *Relf & Weysham*, of which slaves those seized formed a part, and for which the draft had been given and received in payment. The act recited that the special mortgage is retained on the slaves, to secure the payment of the draft, in favor of the vendors, on the person or persons who may afterwards hold said draft.

The draft was paid at its maturity by *Toledano*, without any subrogation from the creditors at the time of payment, and the question presented is whether, by this payment of his acceptance, the debt, as to third persons, was extinguished, or whether it still remained as a subsisting obligation between the drawers of the bill and the acceptor, and whether the mortgage continued operative adversely to other mortgage creditors.

The debt, as the act of mortgage recited it, was the debt of *Toledano*; the draft itself makes *Toledano* the principal debtor; and, in paying his draft, he paid his own debt, which the mortgage was given to secure. The purpose of the mortgage was accomplished, the creditor was paid, and as no other object is disclosed in the act of mortgage, and as there is no reservation or qualification contained in it, it seems to us clear that the mortgage cannot be kept alive for any other ulterior object, or for the benefit of any other person, unless it results from the tenor of the draft itself. The form of the obligation which is recorded, and is the basis of the mortgage is, we think, under an hypothecary system of necessity, obligations on the parties, as it is all the information the public have to look to. They are strangers to the secret equities subsisting between the parties, and only act upon the record as it stands. If it was intended that *Toledano* should have the benefit of this mortgage on paying the draft, without being put in funds by the drawers, or bound as to them to pay it, it ought to have been stipulated in the act. *Flamisher* v. *Birkland*, 5 Rob. 208. If this view of the subject be correct, and we are satisfied that it is, it becomes unnecessary to consider the attempts to revive or restore the mortgage subsequent to the payment of the debt by the principal debtor.

SALAUN<br>v.<br>RELF.

We have not overlooked the fact that a sale made on the 3rd October 1848, by *Weysham* to *Relf*, of *Weysham's* univided half of the slaves, was recorded in the mortgage office on the 11th October 1848. This recording preserved from the last named date the vendor's privilege arising from that sale. But before *Weysham* sold, to wit, on the 28th September 1848, the judgment of *Mrs. Salaun* against *Weysham* was recorded in the mortgage office. It therefore is clear that the vendor's privilege in favor of *Relf* upon the individual half arising from the sale by him to *Weysham* and the recording thereof, is secondary to the judicial mortgage against *Weysham* in favor of *Mrs. Salaun*.

It is ordered that the judgment of the court below be reversed, and that the mortgage of the 14th February 1848, in favor of *Bellf & Stebbins*, and the subrogation to said mortgage in favor of *C. Toledano*, dated 7th February 1849, be postponed after plaintiff's judicial mortgage against *Relf*, as far as they bear upon the slaves *Henry*, *Randall* and *Sarah* and child; and that the plaintiff be paid in preference to said mortgage and subrogation out of the proceeds of said slaves; the costs of both courts to be paid by the appellees.